J-S08029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: T.D. (MINOR CHILD) | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.D., MOTHER | No. 1305 WDA 2015 |

Appeal from the Order Entered July 24, 2015
In the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-15-0392

BEFORE: STABILE, DUBOW, and MUSMANNO, JJ.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 8, 2016**

Appellant, L.D., ("Mother") appeals from the Order entered July 24, 2015, in the Court of Common Pleas of Washington County, involuntarily terminating her parental rights to T.D. ("Child"). We affirm.

On July 14, 2014, Washington County Children and Youth Social Service Agency's ("CYS") involvement began with a referral when Child tested positive for heroin at birth. Child was transferred to another hospital for treatment of Neonatal Abstinence Syndrome ("NAS"), or severe withdrawal. The day after giving birth, Mother checked herself out of the hospital where Child was born, against medical advice. Mother went to visit Child at the hospital where Child was being treated for NAS. Mother did not return to visit Child in the hospital again.

Mother was incarcerated at the end of July 2014 on a probation violation and released on September 24, 2014, to an inpatient drug rehabilitation facility.

Child was placed in special-needs foster care upon her release from the hospital, where she has remained. On September 9, 2014, the trial court adjudicated Child dependent.

Mother was released from the drug rehabilitation facility in early October 2014. She did not make efforts to visit or otherwise contact Child. *See N.T.*, 06/24/2015, at 83, 87. On March 11, 2015, Mother was arrested on a bench warrant, and was again incarcerated on March 27, 2015.

On March 27, 2015, CYS filed a Petition for Involuntary Termination of Parental Rights as to Mother and Father pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), and (b). The trial court held a hearing on the petition on June 24, 2015, at which the following testified: Tenisha Brown, a caseworker for CYS; Brandon Reilly, M.D., Child's pediatrician; Father; and Mother. On June 24, 2015, the trial court entered an Order granting the involuntary termination of Mother's parental rights and denying the involuntary termination of Father's rights.[1]

---

[1] The trial court's disposition as to Father is not a subject of this appeal.

On August 24, 2015, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). She raises the following issues:

1. Whether the trial court erred in terminating [Mother's] Parental Rights pursuant to Sections 2511(a)(1) and (2) of the Adoption Act, when [Child] ha[d] only been placed for seven (7) months at the time the termination petition was filed and when Mother could be expected to remedy the issues and circumstances which necessitated placement within a reasonable period of time?

2. Whether the trial court erred in finding that the termination of [Mother's] Parental Rights served [Child's] needs and welfare when, based upon the evidence and testimony of record, [Father's] rights were preserved; and therefore, termination in this case of only one of the biological parents provides no permanency for [Child]?

Mother's Brief at 6.

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

After a petition is filed, a trial court may terminate parental rights if "the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. 2511(a)(1). Parental rights may also be terminated if the "repeated and continued incapacity, abuse,

neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." **23 Pa.C.S. 2511(a)(2)**. The trial court must give primary consideration to the "developmental, physical and emotional needs and welfare of the child." **23 Pa.C.S. § 2511(b)**. "With respect to any petition filed pursuant to subsection (a)(1), [ ] the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition. **Id**.

Although the trial court in the instant case found that CYS had met its burden of proof under both Sections 2511(a)(1) and (a)(2), we need only concur with its decision as to any one subsection in order to affirm the termination of a party's parental rights. **In Re: J.E.**, 745 A.2d 1250, 1255 (Pa.Super. 2000).

Mother avers, *inter alia*, that the trial court erred in terminating her parental rights to Child pursuant to Section 2511(a)(2). **Mother's Brief** at 9. She contends that the trial court erred in finding she did not make sufficient efforts to regain Child. **Id**. at 15.

The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in **In re Geiger**, 331 A.2d 172 (Pa. 1975). There, the Pennsylvania Supreme Court announced that (under what is now

- 5 -

Section 2511(a)(2)), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998).

Here, the trial court properly concluded that CYS had sustained its burden with respect to Section 2511(a)(2). At the termination hearing, Ms. Brown testified that Mother had been present at the dependency hearing, and the court had ordered her to undergo a drug and alcohol evaluation, a mental health assessment, participate in parenting, and obtain safe and suitable housing. *N.T.* at 12. Ms. Brown further testified that Mother failed to complete the services ordered, *id.* at 16, and there was no documentation to show that Mother participated in any of the required services between October of 2014 and March of 2015, the period in which Mother was not incarcerated. *Id.* at 47.

Mother testified that she was using drugs heavily from October of 2014 until March of 2015. *Id.* at 83. She also testified that she "is a drug addict." *Id.* at 87. Mother further testified that she was "on the lam" for at least six months attempting to evade apprehension and arrest. *Id.* at 94. She conceded that she made no progress in securing proper housing. *Id.* at 98.

Our review of the record supports the trial court's determination that although Mother had been specifically informed of the steps she must take to parent her Child, she had failed to make the effort required. As the trial court correctly observed, the record shows that Mother had no cogent plans to remain drug free and had not developed a plan for housing and treatment for drug abuse, despite the fact that she expected to be released from incarceration in the near future. *Id.* Record evidence also supports the trial court's conclusion that Mother had not and would not remedy the conditions that led to Child's placement in foster care. *Id.* The trial court did not abuse its discretion or err as a matter of law in terminating Mother's parental rights pursuant to Section 2511(a)(2).

Finally, Mother avers that "no legitimate purpose is served by the termination of the rights of Mother when Father's rights were preserved." *Mother's Brief* at 18. She contends that, even if her parental rights are terminated, Child is not free for adoption or permanency unless or until Father's parental rights are terminated and as such termination of her rights served no legitimate purpose. *Id.* at 17-18, citing *In Re: D.C.D.*, 105 A.3d 662 (Pa. 2014). Mother does not address the trial court's observation that there is no bond between her and Child.

Pursuant to 23 Pa.C.S. § 2511(b), the trial court must determine whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. *In re C.M.S.*, 884 A.2d 1284,

1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). This Court has instructed that the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*.

Our review of the record indicates that the trial court properly concluded that there is no bond between Mother and Child. Ms. Brown testified that Mother has had only four visits with Child from the time of Child's birth to the involuntary termination hearing, and two of the visits occurred prior to CYS filing its petition. *N.T.* at 17. Ms. Brown also testified that Mother did not send Child gifts at Christmas. *Id.*

Ms. Brown testified that there is a bond between Child and her current foster placement, and Child views her foster mother as her mother. *Id.* at 19. Ms. Brown further testified that Child is thriving in her current placement and opined that termination is in the best interest of Child. *Id.* at 19, 23.

We have stated that "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). We conclude that the competent evidence in the record supports the trial court's determination that there is no bond between Mother and Child, and that

terminating Mother's parental rights pursuant to Section 2511(b) serves Child's best interest.

In arguing that her parental rights should not have been terminated because Father's rights were not terminated, Appellant relies on *In Re: D.C.D.*, *supra.* That reliance is, at best, misplaced. Appellant correctly observes that the trial court in *D.C.D* had concluded that "it would be 'inappropriate' to terminate [the m]other's parental rights when grounds did not also exist to terminate Father's parental rights." *Id*., 105 A.3d at 665; *Appellant's Brief* at 18. However, Appellant fails to acknowledge that the Superior Court reversed the trial court's decision regarding the mother's rights, and remanded the issue to the trial court with instructions. As our Supreme Court observed, upon remand, the trial court terminated the mother's parental rights. *In Re D.C.D.*, *supra* at 665. *In Re: D.C.D.* provides absolutely no support for Appellant's argument.

After careful review, we affirm the Order terminating Mother's parental rights on the basis of Section 2511(a) (2) and (b) of the Adoption Act.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2016