J-S20044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION: R.C.B. A/K/A R.C.B. A/K/A R.L.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.S., BIRTH MOTHER | No. 1642 WDA 2015 |

Appeal from the Order Entered September 18, 2015
in the Court of Common Pleas of Allegheny County
Civil Division at No.: CP-02-AP-0000088-2015

| | |
|---|---|
| IN RE: ADOPTION OF: R.L.B. III, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.S., BIRTH MOTHER | No. 1643 WDA 2015 |

Appeal from the Order September 18, 2015
in the Court of Common Pleas of Allegheny County
Orphans' Court at No.: CP-02-AP-0000114-2015

BEFORE: PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED MAY 09, 2016**

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant, T.S. (Mother), appeals from the orders of the court of Common Pleas of Allegheny County that terminated her parental rights to her sons R.C.B., born in May of 2000, and R.L.B. III (R.L.B.), born in October of 2001 (Children).[1] Mother concedes that she withdrew her opposition to the terminations during the hearing on termination of parental rights which occurred on September 18, 2015. Nevertheless, she appeals on the grounds that the trial court erred (or abused its discretion) in not finding that Appellee, the Allegheny County Office of Children, Youth and Families (CYF), failed to meet its burden of proof by clear and convincing evidence. The Guardian *Ad Litem* has filed a motion to dismiss for failure to preserve the questions below. Mother filed an answer, by counsel. For the reasons that follow, we affirm the orders of termination, and deny the motion to dismiss as moot.[2]

Mother is a resident of Ohio. Ohio authorities removed the Children from Mother's custody in August of 2013, over concerns about Mother's ability to care for her children. Mother has a long history of mental illness, abuse of alcohol and other substances, criminal assaults, and depression.

_____

[1] This Court consolidated the two appeals *sua sponte* by order dated November 5, 2015.

[2] The trial court also terminated the parental rights of R.B. II, the putative father (Father), as well as any Unknown Father of the Children. Father voluntarily withdrew his contest at the hearing. (**See** N.T. Hearing, 9/18/15, at 45). None of these persons filed an appeal.

These concerns were intensified by a fatality in the family, specifically, the suicide of an older brother of the Children.

CYF placed the Children with their Father in Pittsburgh. However, they were soon removed after Father assaulted the older brother, R.C.B. The trial court adjudicated the Children dependent on October 16, 2013. R.C.B. was placed with M.M., a navy chaplain (Foster Father). R.L.B. was assigned to a shelter but joined his brother with Foster Father M.M. the following year and remains with them.

CYF filed a petition to terminate involuntarily the parental rights of Mother and the putative father and any unknown father of R.C.B. on May 4, 2015, and a petition to terminate involuntarily the parental rights of Mother and the putative and any unknown father of R.L.B. on July 10, 2015. The trial court held a hearing on those petitions on September 18, 2015. Testifying at that hearing were Mother, by telephone from Ohio, Father, and CYF caseworker, Therese Tuminello.

Mother had contested the termination of her parental rights but she withdrew her objection to the proceeding at the September 18, 2015, hearing. (*See* N.T. Hearing, 9/18/15, at 7). On inquiry by the trial court, Mother testified that no one was forcing her to withdraw and that no one promised her anything in exchange for her withdrawal. (*See id.*).

Mother's family service plan (FSP) goals were: 1) cooperate with CYF; 2) maintain contact with the Children; 3) undergo a drug and alcohol

evaluation and follow all recommendations; 4) maintain safe and appropriate housing; 5) complete domestic violence counseling; 6) complete a parenting class; and 7) undergo a mental health evaluation and follow all recommendations. The only FSP goal Mother achieved was to maintain contact with the Children by phone and through visits about every three months (*See id.* at 20).

CYF caseworker, Therese Tuminello, testified that the termination of Mother's parental rights would meet the needs and welfare of the Children. (*See id.* at 28). R.C.B. had been residing in his current foster home with Foster Father since August of 2014. R.L.B. moved into the home on September 8, 2015, after having visited with Foster Father since August of 2014. Ms. Tuminello testified that her observations of the Children with Foster Father were very positive and that CYF was very pleased with the placement. (*See id.* at 27). According to Ms. Tuminello, the Children have bonded with Foster Father. (*See id.* at 28).

Terry O'Hara, Ph.D., conducted individual psychological evaluations of Mother and the Children, as well as interactional evaluations of the Children with Foster Father and with Mother between July of 2015 and August of 2015. (*See* O'Hara Report, CYF Exhibit 1). Dr. O'Hara's report, supporting termination and adoption, were admitted without objection. (*See* N.T. Hearing, at 33).

Dr. O'Hara observed that Foster Father exhibited several positive parenting skills. He was meaningful and specific in his praise of both boys, interacted well with them, joked with them, and was calm and relaxed in their presence. Dr. O'Hara observed a secure attachment between the Children and Foster Father. Both R.C.B. and R.L.B. expressed a desire to reside with Foster Father. Dr. O'Hara observed that the Children also expressed a desire to reside with Mother, (while conceding that was not practical or likely), praised her, and interacted well with her at times, but he did not have sufficient evidence that the Children experienced a secure attachment with Mother.

Dr. O'Hara opined that Mother is not in a position to provide for the needs and welfare of the Children because of her significant psychiatric problems, her criminal history, chronic unstable housing, substance abuse, lack of accountability for her actions, and longstanding history of domestic violence. He opined that the Children would be at risk if returned to Mother's care. Dr. O'Hara recommended that Mother's parental rights be terminated and the Children adopted. According to Dr. O'Hara, the benefits of adoption for the Children, including safety and security, outweighed any possible detriment caused by the termination of Mother's parental rights. (*See* O'Hara Report, CYF Exhibit 1).

The trial court entered its orders terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8) and (b) on September 18,

2015. Mother filed her notices of appeal and concise statements of errors complained of on appeal on October 19, 2015.[3] **See** Pa.R.A.P. 1925.

The Guardian *ad litem* filed a motion to dismiss, arguing that Mother, by withdrawing her contest of the petition, failed to preserve any issues on appeal. (**See** Motion to Dismiss, 11/23/15, at 2-3). The motion was deferred to this panel for disposition.

Mother raises the following question on appeal:

I. Did the trial court abuse its discretion and/or err as a matter of law in concluding that [CYF] met its burden of proving that termination of [Mother's] parental rights would best serve the needs and welfare of the [C]hildren pursuant to 23 Pa.C.S.A. §2511(b) by clear and convincing evidence[?]

(Mother's Brief, at 7).

Our standard of review is well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

**In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

_____

[3] October 19, 2015 was a Monday; Mother's appeal was timely.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a) (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511 (2), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re T.F.**, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**In the Interest of K.Z.S.**, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of **In re Geiger**, 459 Pa. 636, 331 A.2d 172 (1975). There the Pennsylvania Supreme Court announced

that, under what is now Section 2511(a)(2), the petitioner for involuntary termination must prove "[t]he repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent." *Id.* at 173.

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 533 Pa. 115, 620 A.2d 481, 485 (1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

We begin our analysis by observing, as already noted, that Mother withdrew any objection to CYF's petitions at the hearing. (*See* N.T. Hearing, 9/18/15, at 7). In her motion to dismiss, the Guardian *ad litem* for the Children argues that Mother has thus failed to preserve any issues on appeal by withdrawing her contest at the hearing. (*See* Motion to Dismiss, 11/23/15, at 2-3). Furthermore, the Guardian *ad litem* argues, Mother waived any claim on appeal by her failure to identify a specific reviewable

issue in her concise statement. (**See id.**; **see also** Concise Statement, 10/19/15). We are sympathetic to the arguments raised by the Guardian *ad litem*.

Nevertheless, in consideration of the significance of the issues under review, in the interest of judicial economy, and with the hope of avoiding, if possible, the burdens of additional unnecessary appeals, we decline to dismiss without our own independent review of the merit, *vel non*, of Mother's claims. Accordingly, we will deny the motion to dismiss.

On independent review, however, we conclude that Mother has waived her claim that the trial court erred or abused its discretion when it terminated her paternal rights pursuant to section 2511(b). With exceptions not relevant to the facts or procedure of this case, "[a] party waives all defenses and objections which are not presented either by preliminary objection, answer or reply[.]" Pa.R.C.P. 1032(a). Furthermore, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Finally, Mother's concise statement fails to identify a specific reviewable issue of trial court error. Instead, it asserts the generic proposition that the court erred in concluding CYF met its burden of proof on the bonding issue. (**See** Concise Statement, 10/19/15). This is not enough to enable meaningful review.

"[W]hen an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." ***Reinert v. Reinert***, 926 A.2d 539, 542 (Pa. Super. 2007) (citations omitted).

Similarly, in her brief, Mother fails to develop an argument supported by citation to pertinent authority that the trial court erred in its analysis of the bonding issue. (***See*** Mother's Brief, at 13-16).

Instead, with the exception of two brief citations to caselaw for general principles, Mother supports her claim chiefly by revisiting the evidence and asking us, in effect, to reach a different conclusion. (***See id.*** at 14-16). Mother does not develop an argument which links the facts of her case to the general principles of law she cites. Accordingly, Mother does not develop a coherent legal argument to support her conclusion that the trial court erred in terminating her parental rights under our standard of review. She has, therefore, waived that argument.

"The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa.

Super. 2006) (citations omitted); *see also Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) (stating, "[i]t is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal") (*quoting Jones v. Jones*, 878 A.2d 86, 90 (Pa. Super. 2005)). "[T]he 'argument' section of an appellate brief must contain a full discussion of the points raised accompanied by citation to pertinent authority." *In re Child M.*, 681 A.2d 793 (Pa. Super. 1996) (citation omitted). For all these reasons, Mother's claim is waived.

Moreover, it would not merit relief. Our review of the record confirms that it contains sufficient credible evidence to permit the trial court to conclude that Mother's repeated and continued incapacity, abuse, neglect or refusal to parent the Children has caused them to be without the essential parental care necessary for their physical or mental well-being, and that that condition cannot be remedied. "The trial judge's decision is entitled to the same deference as a jury verdict." *In re L.M.*, *supra* at 511 (citations omitted). "Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings." *In re M.G.*, supra at 73-74 (citations omitted).

Here, the trial court **did** address the bonding issue, finding that even though the Children do have a bond with Mother, termination of Mother's parental rights will have a positive effect by ending the uncertainty of their

present situation, and improving prospects for a permanent resolution of their status. (*See* Trial Ct. Op., at 7).

Both Ms. Tuminello, the caseworker, and Dr. O'Hara opined that the termination of Mother's parental rights would be in the Children's best interest. Ms. Tuminello testified that CYF was very pleased with the Children's placement with Foster Father and that the Children have bonded with him. (*See* N.T. Hearing, at 27-28). According to Ms. Tuminello, the termination of Mother's parental rights would meet the needs and welfare of the Children. (*See id.* at 28).

Dr. O'Hara observed a secure attachment between the Children and Foster Father and noted that both R.C.B. and R.L.B. expressed a desire to reside with Foster Father. He opined that the Children would be at risk if returned to Mother's care because of her significant psychiatric problems, her criminal history, chronic unstable housing, substance abuse, lack of accountability for her actions, and her history of domestic violence. According to Dr. O'Hara, the benefits of adoption for the Children outweigh any possible detriment caused by the termination of Mother's parental rights. Dr. O'Hara recommended that Mother's parental rights be terminated and the Children adopted. (*See* O'Hara Report, CYF Exhibit 1).

We discern no basis on which to disturb the findings of the trial court. Nor did the court commit any error of law.

Accordingly, we affirm the trial court's orders, entered September 18, 2015, terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(2) and (b).

Orders affirmed. Motion to dismiss denied as moot.

Judge Panella joins the Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/9/2016