J-S33041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| T.R.G. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.R.W. | |
| Appellant | No. 1796 WDA 2015 |

Appeal from the Order November 3, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): F.D. 11-006272-008

BEFORE:  GANTMAN, P.J., OLSON, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                          **FILED JULY 29, 2016**

Appellant, C.R.W. ("Father"), appeals from the order entered in the Allegheny County Court of Common Pleas, which directed Father to pay Appellee, T.R.G. ("Mother"), $837.98 per month in child support.  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Father raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED IN THE ASSESSMENT OF EARNING CAPACITY OF THE PARTIES WHEN [IT] ASSESSED [FATHER] AN EARNING CAPACITY OF 40 HOURS PER WEEK PLUS OVERTIME DESPITE HIS DISABILITY AND ONLY ASSESSED [MOTHER] AN EARNING CAPACITY OF 18 HOURS PER WEEK DESPITE HER ABILITY TO WORK FULL TIME?

_____

*Former Justice specially assigned to the Superior Court.

WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO PRORATE CHILDCARE COSTS AND EXPENSES WHEN THE AMOUNT PRESENTED BY MOTHER WAS FOR THE PARTIES' CHILD AND MOTHER'S OTHER CHILD[?]

WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO APPORTION A *PRO RATA* SHARE OF THE COST OF THE HEALTH CARE PREMIUMS PROVIDED BY FATHER'S NEW WIFE?

WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO APPLY THE MULTI-FAMILY DISCOUNT FOR FATHER'S OTHER TWO CHILDREN?

WHETHER THE TRIAL COURT ERRED IN FAILING TO PERMIT THE INTRODUCTION OF [FATHER'S] MEDICAL RECORDS TO ESTABLISH FATHER'S DISABILITY?

WHETHER THE TRIAL COURT ERRED IN FAILING TO REDUCE FATHER'S SUPPORT OBLIGATIONS DESPITE THE FACT THAT HE SHOWED A SIGNIFICANT CHANGE IN CIRCUMSTANCES AND HIS INABILITY TO WORK?

(Father's Brief at 4-5).

Preliminarily, we observe the failure to raise an issue in the exceptions to a hearing master's recommendation constitutes waiver of that issue on appeal. **Baker v. Baker**, 624 A.2d 655, 656 (Pa.Super. 1993); Pa.R.A.P. 302(a). Additionally:

The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities. This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority. Failure to cite relevant legal authority constitutes waiver of the claim on appeal.

*In re Estate of Whitley*, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013).

Instantly, Father failed to raise his fifth issue on appeal in his timely filed exceptions to the hearing master's recommendations. Additionally, Father's appellate brief does not include any citations to supporting legal authority for his second, third, fifth, and sixth issues on appeal. Thus, Appellant's second, third, fifth, and sixth issues on appeal are arguably waived for purposes of our review. *See Baker, supra*; *In re Estate of Whitley, supra*. Nevertheless, the trial court comprehensively analyzed the questions presented, so we decline to waive these issues on appeal.

Our standard review of child support orders is well-settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Krebs v. Krebs*, 944 A.2d 768, 772 (Pa.Super. 2008) (*quoting* *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Cathleen Bubash, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions

presented. (*See* Trial Court Opinion, filed December 17, 2015, at 4-8) (finding: record supports hearing officer's recommendations; many of hearing officer's findings about Father's disability and Mother's expenses for Child were based on credibility determinations, which trial court accepted; **(issue 1)** hearing officer assigned Father earning capacity of $15.00 per hour, which is significantly lower than Father's previous income; hearing officer also held Father to forty-five-hour work week because overtime was common in Father's previous employment; even though Father may not have left previous employment willfully, it was appropriate for hearing officer to assign this earning capacity to Father because Father has obligation to support Child; despite Father's obligation to support Child, Father has made no effort to obtain any type of income through employment or disability payments since 2013; significantly, Father failed to file appeal when his social security disability claims were denied and his private disability payments were discontinued; Father also did not introduce any evidence of ongoing job search or what he could earn; Father's actions were tantamount to voluntary reduction of income, and earning capacity assigned to Father was not unreasonable or punitive in light of his age, health, mental and physical condition, training and earning history; hearing officer considered all relevant factors, and Father's assigned earning capacity is one he could realistically earn; with respect to Mother's earning capacity, Mother presented evidence of ongoing job search to supplement her income from

current job, where she works eighteen hours per week at rate of $22.00 per hour as dental hygienist; Mother testified credibly that dental hygienists are traditionally hired part-time; Mother has very young children at home, including Child; if Mother picked up additional work outside home, it would impact daycare costs, which would also affect Father's support obligations; Mother recently underwent treatment for breast cancer, which likely impacted her job search; hearing officer properly assigned Mother part-time earning capacity; **(issue 2)** both Mother and Child's caregiver testified that Mother's childcare costs are fixed amount per week regardless of hours worked by caregiver or number of children watched; hearing officer deemed this testimony credible; Mother also presented evidence of Child's pre-school expenses and costs for dance lesson for which she received no contribution from Father; thus, hearing officer's decision not to "pro-rate" childcare expenses in calculation of Father's support obligation was proper; **(issues 3-4)** with respect to Father's claim that court should have prorated healthcare costs, hearing officer determined Father's current wife covers cost of health insurance for her four family members and Child; further, Father's support obligations for all of his children does not exceed half his monthly earning capacity because Father does not pay support for two children with current Wife; additionally, Father's claims for reduction of support are more than offset by additional income in Father's household provided by Father's current wife; Father's current wife has no obligation to

support Child, but her substantial contributions to household income offset a great deal of Father's personal self-sustaining expenses, which make up significant part of calculations for support; **(issue 5)** Father did not provide any admissible documentary medical evidence to establish his disability; all medical information Father sought to introduce at support hearing was inadmissible hearsay; thus, hearing officer properly sustained Mother's objection to introduction of medical records; **(issue 6)** Father did not introduce any evidence of change of circumstances as there was no prior support order; nevertheless, hearing officer did allow Father and Father's current wife to testify about Father's alleged disability; Father testified about treatments he has received and treatments he is likely to receive in future; this testimony did establish that Father's condition may preclude him from obtaining same employment he had before injury; however, Father's assigned earning capacity is not equal to amount Father earned at previous employment; record does not establish that Father cannot work in some capacity; in fact, denial of Father's application for social security disability benefits and termination of Father's private disability benefits demonstrate opposite; Father has not appealed his denial of social security disability benefits or submitted new application; denial of Father's application for social security disability benefits stated that Father's condition does not limit his ability to work; Mother also introduced evidence to prove Father's condition did not prevent him from engaging in physical activity, which

called Father's credibility into question; Father's current wife testified that Father attempted to get his EMT license transferred to Indiana; Father's own social media posts demonstrate that Father participates in 5k walks/runs while pushing stroller; Mother and maternal grandfather credibly testified that Father lifts and carries Child; medical records and information about how Father recently sustained hand injury while working in auto repair shop, further calls into question Father's accounts of his limitations; Father stated before hearing officer that he planned to returned to school to pursue career as teacher or psychiatrist; nevertheless, Father has not taken any steps towards these educational pursuits despite lack of income for more than two years; moreover, during custody proceedings, Father listed employment opportunities as one of his reasons for relocation to Indiana; move to Indiana requires Father to drive six hours each way to exercise custody, which Father is able to do despite disability; under these circumstances, hearing officer's support recommendation was proper).  Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Justice Fitzgerald joins this memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

C. R. W.

        Plaintiff,

   v.

T. R. G.

        Defendant.

Opinion

No.:   FD-11-006272-008
Superior Court No. 1796 WDA 2015

BY:

Honorable Cathleen Bubash
440 Ross Street
Suite 5036
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:

Angela R. Winslow, Esq.
Pion Nerone Girman Winslow & Smith
1500 One Gateway Center
420 Fort Duquesne Blvd.
Pittsburgh, PA 15222

Counsel for Defendant:

Gusty Sunseri, Esq.
1290 Freeport Rd.
Pittsburgh, PA 15238

FILED

15 DEC 17 AM 11:01

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

C.R.W.

        Plaintiff,

v.

T.R.G.

        Defendant.

No.: FD-11-006272-008

## OPINION

Judge Cathleen Bubash

December 17, 2015

C.R.W. ("Father") appeals from my November 3, 2015 Order which dismissed his exceptions and adopted the July 13, 2015 Recommendation that Father pay $837.98 per month for the support of the parties' minor child. For the reasons that follow, my Order should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

The parties were married on March 17, 2001 and had, Child in 2010, and divorced on May 26, 2011. Both have remarried and each has had another child with their new spouses. In March of 2013, the parties entered into a consent order for shared custody of Child, but Father did not, in practice, exercise 50% custody time. Mother and maternal grandfather testified before the hearing officer that Father exercised custody approximately 18% of the time. (TR. p. 27, 93). In approximately May of 2014, Father moved to Indiana without notifying Mother and began exercising custody even more rarely.

T.R.G. ("Mother") filed for child support on August 5, 2014. She also

2

petitioned for a custody modification on November 7, 2014 upon discovering Father had relocated to Indiana. A temporary custody order was entered which provided Father with one long weekend per month of custody time with Child. [1]

The support case was declared complex due to Father's assertion that he was disabled from working. A hearing to establish child support was ultimately held before a Hearing officer on May 27, 2015. Evidence was presented that Father was paying no support (TR. p. 12) at that time. Evidence was presented that Mother works three days per week as a dental hygienist, and that she is looking for supplemental work. Her current Husband's income was presented, as was that of Father's wife. Father, who claims complete disability, attempted to introduce medical records and reports which were excluded as hearsay. Father and his current wife did, however, testify as to his disability and its effects and limitations on his life. Moreover, Father's social security disability applications and denials were also introduced.

Mother requested that Father be assigned an earning capacity based on his actual previous earnings of over $90,000.00 per year as a mining supervisor. Father requested that he not be charged with child support at all due to his disability and his belief that he should be given the "courtesy" he provided to Mother of not seeking support from her while she was in school studying to be a dental hygienist. (T.R. p. 147).

The Hearing officer found Mother's net income to be $1,379.00 per month based on her paystubs and assigned Father a reasonable earning capacity of $15.00 per hour, 45 hours per week, "given his employment history and education," for a net monthly income of $2,145.00. Mother's expenses for the child's schooling, daycare, and activities were presented and Father's share was included in the calculation. This resulted in a child support award of $837.98 per month.

Father filed exceptions which I denied on November 3, 2015. Father filed a timely Notice of Appeal and, in response to an order issued pursuant to Pa.R.A.P. 1925(b), filed his Concise Statement of Matters Complained of on Appeal, which are virtually identical to his original eight

---

1 A custody hearing was held as a result of Mother's Motion and on July 16, 2015 I awarded Mother primary custody with Father having custody every third week of the summer and one weekend per month during the school year.

3

exceptions, as follows:

(a) The Trial Court erred in the assessment of earning capacity of Father when they assessed him at full time plus overtime earning capacity despite his disability.

(b) The Trial Court erred in the assessment of Mother's earning capacity when they failed to impute a full time earning capacity to ner.

(c) The Trial Court erred in failing to properly prorate childcare costs and expenses when the amount presented by Mother was for the parties' child and Mother's other child.

(d) The Trial Court erred in failing to properly adjust the amount of child care expenses due to the Federal Child Care Tax Credit for which Mother is eligible.

(e) The Trial Court erred in failing to properly reduce support for Father's cost of health insurance premiums.

(f) The Trial Court erred in failing to apply a multi-family reduction for Father

(g) The Trial Court erred in failing to permit the introduction of Father's medical records and reports necessary to establish Father's disability.

(h) The Trial Court erred in failing to reduce Father's support obligation despite the fact that he had shown a significant change in circumstances.

OPINION

In reviewing a recommendation of support, this Court is not required to hold a second hearing, but rather to make an independent review of the record to determine if the hearing officer's recommendation is adequately supported therein. _Neil v Neil_, 731 A.2d 156 (Pa.Super 1999). Moreover, this Court is bound by a hearing officer's determinations of credibility, especially where, as here, they are supported by the substantial weight of the evidence. _Moran v Moran_, 839 A.2d 1091 (Pa.Super 2003). In the instant case, I found that the Hearing Officer's recommendation was supported by the record. I found that many of the hearing officer's findings regarding Father's disability as well as Mother's expenses for the child were based on credibility determinations with which I agreed.

4

(a) In his first assignment of error, Father states it was error to assign him an earning capacity greater than full time, despite his claimed disability. The Hearing officer assigned him an earning capacity of $15.00 per hour, significantly lower than his last employment income. He held him to a 45 hour workweek, as overtime was commonplace in his former employment.

I first determine that assigning Father an earning capacity was appropriate. While he may not have willfully left a job, Father has an obligation to support his child. Regardless of this fact, he has made no effort to obtain any type of income – whether from employment or disability payments – since 2013. When Father's claims were denied and when his private disability payments were discontinued, he failed to appeal. Father introduced no evidence of any job search at all or evidence of what he could earn or whether overtime would or would not be available to him. I found, under the circumstances that this failure to affirmatively seek disability payments or any type of employment was tantamount to a voluntary reduction of Father's income.

The evidence before the Hearing officer was that Father's previous employment included significant overtime, which Father referenced when applying for the disability benefits which were denied. Evidence regarding Father's disability and the extent to which it limits his ability to work is discussed below with regard to his assignment of error at (g).

A person's support obligation is determined primarily by their actual financial resources and their earning capacity. *Hoag v. Hoag*, 646 A.2d 578 (Pa. Super. 1994). Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. *See, DeMasi v. DeMasi,* 530 A.2d 871 (Pa. Super. 1987). Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history. *Gephart v. Gephart,* 764 A.2d 613 (Pa.Super.2000). *See,* Pa.R.C.P 1910.16-2.

I did not find the Hearing officer's decision to be unreasonable or punitive under these circumstances, considering Father's age, health, mental and physical condition, training and earning history, including any disability. The Hearing officer utilized an hourly wage which was significantly lower than Father's previous income, which I found reflected, that the Hearing officer took all of the relevant factors into consideration. The amount assessed is one which Father could

5

realistically earn.

Assuming, *arguendo*, that including overtime in the calculations was error, the effect of Father's monthly obligation is minimal, resulting in a net difference of $64.00 per month.

(b)  Father next complains that Mother was not assigned a full time earning capacity. Mother presented evidence of the jobs she has been seeking in addition to the job she currently holds at 18 hours per week, $22.00 per hour. (TR. p. 14-17). Mother credibly testified that dental hygienists are traditionally hired part time and introduced evidence that she has been seeking an additional job. Additionally, Mother has very young children at home, including Father's child. Any additional work she would pick up would impact her daycare costs and Father's responsibility for the same. Mother recently underwent treatment for breast cancer which likely impacted her job search as well. I found using Mother's actual earnings to be appropriate.

(c)  Father's third assignment of error is related to Mother's child care expenses. Both Mother and the caregiver she employs testified that Mother's childcare costs are a fixed cost per week – regardless of whether the caregiver watches one or both children or if Mother reduces her days or hours. (TR. p. 20, 47-48. 89-90). The Hearing officer found this testimony credible. She was, therefore correct in not "pro-rating" the childcare expenses. Mother also introduced evidence of the child's pre-school expenses and costs for dance lessons for which she had received no contribution from Father.

(d)  Father complains that the Court did not adjust childcare expenses to reflect the Federal Child Care Tax Credit for which Mother is eligible. In Allegheny County, hearing officers utilize the PACSES System which itself includes the Tax Credit internally as part of the computer generated calculation and it is therefore not customarily set forth in the recommendation. Hearing Officers enter the actual expense incurred into the system for c alculation. This assertion of error has no merit.

(e) & (f) Father complains that downward deviations were not provided for the cost of the provision of health insurance and for the multi-family discount. Husband's current Wife covers the cost of health insurance for her four family members and the child of the parties (TR. p. 7). Husband has two children with his wife and argued at Exceptions that the amount he must pay in

6

support for those children, coupled with the instant support for the subject child, is more than half of his income. However, Father is paying nothing for those two children with his wife as he has no income whatsoever.

I found that these assertions, even if they had merit, were more than offset by the additional income in Father's household, which the hearing officer did not address. Father's current Wife has no obligation to support his child with Mother but her substantial contributions to household income offset a great deal of Father's personal self-sustaining expenses which make up a significant part of the calculations for support.

(g) Father asserts it was error to deny the introduction of the medical records and reports he claims were necessary to establish his disability. The information Father brought with him was inadmissible as hearsay. Mother's objection to the introduction of the records brought by Father was justifiably sustained. Father provided no documentary medical evidence which could have been rightfully admitted to meet his burden of establishing disability. It was not Mother's burden.

As to his assumption at (h), Father introduced no new evidence and there was no prior order.

The hearing officer did, however, allow testimony by both Father and his current Wife regarding Father's alleged disability. Father testified regarding treatment received and treatment which is likely coming up. Upon my reading of the transcript, I do not doubt that Father suffers from significant back troubles. He may, in fact, be precluded by his condition from obtaining the same employment he had before his injury – but he was not held to the income of that employment in the hearing offer's recommendation.

There is nothing in the record which establishes that Father cannot work in some capacity. In fact, the social security disability denials as well as the termination of his disability benefits which are in the record and admitted to by Father, demonstrate just the opposite. Father first applied for SSD in West Virginia in 2013 but never followed up on receiving a determination. (TR. p. 74-75). He applied in Indiana and was denied in 2014 (TR. p. 76-77). He did not appeal this ruling, nor has he reapplied. (TR. p. 78-80, 86). The Social Security Administration determination stated that his condition did not limit his ability to work. His private disability insurance carrier, likewise,

7

denied his claim for continued disability payment . (TR. p. 81).

Evidence was also introduced which went to prove that Father's condition did not prevent him from engaging in physical activity, which also called into question Father's credibility. His wife testified that he attempted to get his EMT license, for work which is clearly very physical, transferred to Indiana. (TR. p. 140). His own social media posts were introduced and demonstrate that he participates in 5K walk/runs and that he does so while pushing his child's stroller. (TR. p. 116-119). Mother and maternal grandfather credibly testified that Father lifts and carries Child, , who weighs significantly more than the 25 pounds Father was initially limited to lifting after he sustained his injury. (TR. p. 37, 93-94). Information contained in medical reports from Father's emergency room visits necessitated by injuries he received in a friend's auto repair shop, as well as Father's testimony of the events which led to the injuries also call into question his accounts of the extent of this disability . (TR. p. 125-129).

Father stated before the hearing officer that he wants to return to school to become either "a teacher or a psychiatrist." (TR. p. 111). Apparently, then, Father himself agrees that he could perform more sedentary work. Yet he has sought none nor has he taken any steps to move forward with any educational pursuits despite having no income whatsoever for over two years.

In addition to all of the information before the Hearing officer at the support hearing, these parties are also known to me from their custody matters. One of the reasons Father gave the court for moving to Indiana in his Petition for Relocation was the opportunity for employment. Because of the move, Father must drive 6 hours each way to come and exercise custody. He testified he has done it quite often. Apparently, long trips in a car are something he can do despite his disability.

I found that the hearing officer's reasoning was sound and that much of his decision was based on his determination of the credibility of the witnesses, with which I agreed. For these reasons, the Order of this Court dated November 3, 2015 should be affirmed.

BY THE COURT:

_____ J.

8