J-S01004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: N.L., J.L., B.L. AND Y.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Y.C., MOTHER | : | No. 1330 MDA 2016 |

Appeal from the Decree July 15, 2016
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s):  1121-2015, 985-2015, 986-2015,
987-2015

BEFORE:   GANTMAN, P.J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JANUARY 27, 2017**

Appellant, Y.C. ("Mother"), appeals from the decree entered in the

Lancaster County Court of Common Pleas Orphans' Court, which

involuntarily terminated her parental rights to her minor children, N.L., J.L.,

B.L., and Y.L. ("Children").  Upon a thorough review of the record, we affirm.

In its opinions, the Orphans' court fully and correctly sets forth the

relevant facts and procedural history of this case.  Therefore, we have no

reason to restate them.[1]  After Mother timely filed a notice of appeal and

_____

[1] Despite the court's entry of separate termination decrees for each child, Mother filed a single notice of appeal in this case.  ***See Dong Yuan Chen v. Saidi***, 100 A.3d 587, 589 n.1 (Pa.Super. 2014) (explaining one notice of appeal from separate decrees is generally discouraged).  Nevertheless, Mother's argument for each decree is identical and stems from the same set of facts.  ***See Baker v. Baker***, 624 A.2d 655, 656 (Pa.Super. 1993)

*(Footnote Continued Next Page)*

concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), Mother's counsel filed an **Anders** brief and petition for leave to withdraw as counsel in this Court on October 13, 2016. On October 19, 2016, this Court determined counsel's **Anders** brief did not comply with all the requirements of **Commonwealth v. Santiago**, 602 Pa. 159, 178-79, 978 A.2d 349, 361 (2009), and ordered counsel to file an amended brief within ten days. Counsel complied on October 27, 2016.

As a preliminary matter, appellate counsel seeks to withdraw representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and **Santiago, supra**. **Anders** principles apply to appeals involving termination of parental rights. **See In re S.M.B.**, 856 A.2d 1235 (Pa.Super. 2004). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise her of the right to obtain new counsel or file a *pro se*

_(Footnote Continued)_ ——————————

(explaining court will overlook filing of one appeal from separate orders where appellant's arguments for each order are identical and stem from same factual precedent). Additionally, the court's opinions address Mother's issue as it relates to each termination decree. **See Dong Yuan Chen, supra** (noting one notice of appeal from separate orders is not fatal where trial court opinion addresses issues pertaining to all orders). Therefore, Mother's failure to file separate notices of appeal from each termination decree is not fatal to our review, and we will address Mother's appeal.

brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61; **In re Adoption of V.G.**, 751 A.2d 1174, 1176 (Pa.Super. 2000). Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed counsel seeks to withdraw representation on appeal:

> Neither **Anders** nor **McClendon**[2] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> *   *   *
>
> Under **Anders,** the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a

---

[2] **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981).

summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-79, 978 A.2d at 361.

Instantly, Mother's counsel filed a petition to withdraw. The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Mother with a copy of the brief and a letter explaining Mother's rights to retain new counsel or to proceed *pro se* to raise any additional issues Mother deems worthy of this Court's attention. (**See** Letter to Mother, dated July 27, 2016, attached to Petition for Leave to Withdraw as Counsel). In the amended **Anders** brief, counsel provides a summary of the facts and procedural history of the case. Counsel's argument refers to relevant law that might arguably support Mother's issue. Counsel further states the reasons for her conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the requirements of **Anders** and **Santiago**.

Counsel raises the following issue on Mother's behalf:

[WHETHER THE COURT'S DECISION TO TERMINATE MOTHER'S PARENTAL RIGHTS PURSUANT TO 23 PA.C.S.A. §§ 2511(A)(1), (2), (5), (8), AND (B) WAS PROPER?]

(**Anders** Brief at 5-10).

The standard and scope of review applicable in a termination of

- 4 -

parental rights case is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted). *See also In re Adoption of C.L.G.*, 956 A.2d 999, 1003-04 (Pa.Super. 2008) (*en banc*).

CYS sought the involuntary termination of Mother's parental rights on the following grounds:

## § 2511.  Grounds for involuntary termination

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*       \*       \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*       \*       \*

(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and

welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8); and (b).

"Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence

- 7 -

of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not

- 8 -

limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.***, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." ***Id.*** at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of ***In re Geiger***, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Z.P., supra*** at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for [twelve] months or more from the date of removal;

- 9 -

(2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have…her [parental] rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *Id.* at 856.

Importantly, neither Section 2511(a) nor Section 2511(b) requires a court to consider at the termination stage, whether an agency provided a

parent with reasonable efforts aimed at reunifying the parent with her children prior to the agency petitioning for termination of parental rights. *In re D.C.D.*, 629 Pa. 325, 342, 105 A.3d 662, 672 (2014). An agency's failure to provide reasonable efforts to a parent does not prohibit the court from granting a petition to terminate parental rights under Section 2511. *Id.* at 346, 105 A.3d at 675.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Jay J. Hoberg, we conclude Mother's issue on appeal merits no relief. The Orphans' court opinions comprehensively discuss and properly dispose of the question presented. (*See* Opinion in Support of Termination of Parental Rights, filed July 15, 2016, at 6-12, and Orphans' Court Opinion, filed August 26, 2016, at 2-6) (finding: with respect to Sections 2511(a)(1), (2), (5), and (8), Mother had opportunity to perform her parental duties prior to CYS' intervention in March 2014, and throughout time Children were in placement; nevertheless, Mother failed to work on any of her permanency plan goals until CYS filed termination petitions in April and May 2015; even after CYS filed termination petitions and court continued case pending bonding assessments, Mother failed to understand importance of completion of her permanency plan goals as evidenced by Mother's lack of cooperation with CYS; court found Mother's current claim she will obtain appropriate housing when she regains custody of Children incredible due to Mother's

disingenuous statements about her housing search throughout history of case; on other hand, court found Dr. Ail's testimony and termination recommendation persuasive and credible in light of Mother's continued lack of ability to provide for physical and mental well-being of Children; CYS established that conditions which led to placement of Children continue to persist despite fact that Children have been in placement for over two years; many of Mother's permanency plan goals still remain incomplete; Mother's conduct throughout case has significantly damaged and impaired emotional growth and development of Children; after more than two years of CYS support, Mother has not resolved instability in her life, and Children remain in limbo while Mother tries to complete permanency plan goals; under these circumstances, sufficient grounds exist for termination under Sections 2511(a)(1), (2), (5), and (8); with respect to Section 2511(b), termination is only viable vehicle available to provide Children with permanency and emotional foundation necessary to overcome years of instability and trauma while in Mother's custody; court found testimony of Dr. Ail and Children's therapists credible and persuasive on bonding issue; continued contact between Children and Mother undoes progress made by Children in therapy and interferes with Children's continued treatment; Children have no beneficial bond with Mother that must be preserved for welfare and development of Children; Children have healthy bonds with their respective placement families; at this juncture, any further delay of permanency and

stability for Children will cause more harm than termination of Mother's parental rights; thus, termination is in best interest of Children, and court properly terminated Mother's parental rights to Children).  Following our independent review of the record, we conclude the appeal is frivolous.  *See Palm, supra*.  Accordingly, we affirm on the basis of the trial court opinions and grant counsel's petition to withdraw.

Decree affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: :
:
:
<u>N.L.</u> , :                    1121-2015
J.L. :                    985-2015
B.L. :                    986-2015
Y.L. / :                    987-2015
:
INVOLUNTARY TERMINATIONS :

<u>OPINION SUR APPEAL</u>

On April 27, 2015, the Lancaster County Children and Youth Social Services Agency

(hereinafter "Agency") filed a petition to terminate the parental rights of birth parents, Y.C.

(hereinafter "Mother") and N.J.L. (hereinafter "Father"), to J.L.,

B.L. , and Y.L. (hereinafter "J.L., B.L. and Y.L," respectively). On

May 13, 2015, the Agency filed a petition to terminate the parental rights of Mother and Father

to N.L. (hereinafter "N.L."). Mother and Father were personally served with copies of

the Petitions on May 29, 2015. The initial termination hearing was held on June 2, 2015, at

which time Parents indicated their desire to contest the termination of their parental rights and no

testimony was taken. The termination of parental rights proceedings resumed on May 17, 2016.[1]

On April 14, 2016, this Court entered an Order suspending visitation between the Parents and

Children in the Juvenile Court dependency proceedings. On July 15, 2016, this Court issued a

Memorandum Opinion and Decree terminating Mother's and Father's parental rights.

Mother filed a timely Notice of Appeal on August 11, 2016, and asserts four issues in her

1925(b) statement. Mother argues that the Court erred in granting the Petition to Terminate

---

[1] The delay between the first and final hearings was the result of the need for bonding assessments between Parents and the Children.

1



Mother's parental rights because the Agency failed to prove by clear and convincing evidence under that Mother's rights be terminated under Sections 2511(a)(1), (2), (5), or (8).

To support her arguments, Mother alleges she has been in counseling since January 1, 2016; no further drug and alcohol treatment was recommended; that she completed her domestic violence goal on February 28, 2016; that, without a recommendation from a mental health provide or referral from the Agency, she completed a parenting class on September 16, 2015; that her Social Security Income totaling $721 per month would be sufficient to care for all four of her children; that she would eventually seek adequate housing should her children be returned to her care; and that she attended visits with the children until visits were suspended by Court Order based on the best interest of the children, on April 14, 2016.

Although this Court believes that these issues were addressed by the Memorandum Opinion entered on the matter and the Suspension of Visitation Order incorporated into that Opinion, to ensure complete coverage of the issues, the Court herein submits this brief Opinion Sur Appeal.

First, Mother asserts that the Court's decision to terminate her parental rights was not in the children's best interest nor supported by clear and convincing evidence under 2511(a)(1) because Mother at all times desire to exercise her parental claim to her children and was never provided the opportunity to perform her parental duties.

Mother's assertion that she was never provided an opportunity to perform her parental duties lacks merit. Mother was provided the opportunity to perform her parental duties prior to her children's placement and throughout inordinate amount of time her children were in

2

placement. She refused to work on any of the goals for reunification approved by this Court, until after the Agency had filed to terminate her parental rights.[2]

These children were first placed into the Agency's physical custody on March 5, 2014. Neither parent attended the permanency review hearing for these children scheduled for March 4, 2014. The termination petitions were filed on April 27, and May 15, 2015. Even as the ongoing bonding assessments kept the termination proceedings pending in Orphans' Court, Mother still failed to understand the imminent, pressing nature of completing her goals, evidenced by her slow, sometimes lacking, cooperation and participation.

Second, Mother asserts that the Court's decision to terminate her parental rights was not in the children's best interest nor supported by clear and convincing evidence under 2511(a)(2) because Mother was never provided the opportunity to show the Agency that she did not have an incapacity and that she could provide essential parental care, control and subsistence necessary for the children's physical and mental well-being.

Again, Mother was given multiple opportunities to show she could provide for her children throughout the dependency matter. Mother had a duty to her children to complete her

---

[2] Mother failed to seek mental health treatment and submit to a drug and alcohol evaluation until the statutory time period for permanency had elapsed. At the time the termination petition was filed, Mother had not even participated in the psychological intake evaluation, despite the Agency's referral and her three "no-shows" for each appointment. By the time Mother finally began counseling in January of 2016, her children had been in the Agency's care for 20 months. Moreover, Mother did not work toward completing either her drug and alcohol goal or her domestic violence goal for another two months after receiving the petitions for termination.

Mother did receive a referral for parenting from both the Personal Parent Trainer (PPT) program and COBYS Family Nurturing program. The PPT was never able to begin because Mother failed to secure stable, appropriate housing required by the PPT program. Mother began the COBYS program in September 2015, and subsequently missed two classes and was late twice, missing more than the four hours permitted.

Mother consistently attended visits with the children after the termination petitions were filed. Prior to the filing of the petitions, Mother missed nine out of seventeen visits between January 2015 and May 2015, alone: Mother missed all four scheduled visits in January 2015; one of four visits in February 2015; three of five visits in March 2015; and the first visit in May 2015.

3

plan. The record shows that Mother failed to complete any of her objectives prior to filing of the termination petitions. More specifically, she failed, at any point, to obtain stable, appropriate housing for her children's safe return. In fact, according to Mother's own Statement of Errors, Mother continues to lack appropriate housing for her children.

The record shows that Mother has repeatedly stated that she was looking for housing for her and her children throughout the life of this case. She failed to do so. The Court finds Mother's current assertion that she would find appropriate housing should the children be returned to her, lacking credibility. Mother has not maintained housing throughout the time of her children's placement. The Agency showed by clear and convincing evidence that Mother continued to lack the capabilities to provide for her children's physical and mental well-being.

Next, Mother asserts that the Court's decision to terminate her parental rights was not supported by clear and convincing evidence under 2511(a)(5) because the conditions that led to the initial placement of the children did not exist since the initial placement of the children, the Agency refused to provide the services and assistance to Mother to remedy the conditions, and that termination of parental rights would not serve the best needs and welfare of the children.

The record shows that at the time the Petition was filed, Mother had not completed her plan for reunification. She remained uncooperative with the Agency, a continuing concern since the placement of these children. As stated in the Memorandum Opinion, the Court did not find Mother's testimony persuasive. Conversely, the Court found the testimony of Dr. Ail and the caseworker credible and persuasive. The Agency proved by clear and convincing evidence that the conditions that led to placement continued to exist.

4

Finally, Mother asserts that the Court's decision to terminate her parental rights was not supported by clear and convincing evidence under 2511(a)(8) because the conditions that led to the removal or placement of the children did not exist at the time of the filing of the Petition nor at the time of the hearing and that termination of Mother's parental rights would not serve the needs and welfare of the children.

The totality of the evidence was discussed at length in a detailed explanation of the current case law and its application to this case in the Memorandum Opinion and Order to suspend visitation. The Agency established by clear and convincing evidence that Mother's parental rights should be terminated under Section 2511(a)(8) and that termination of parental rights best serves the needs and welfare of the Children.

The Court further notes, with respect to its decision to terminate Mother's parental rights under Section 2511(a)(1) and (a)(8), that it followed the statutory requirement of Section 2511(b) and did not consider the efforts made by Mother to complete the goals on her plan initiated after May 29, 2015, when she was served with notice of the filing of the termination petitions.

All issues raised by Mother in her 1925(b) statement have been fully addressed by the April 14, 2016, Order suspending visitation, by the July 15, 2016, Memorandum Opinion and Decree terminating Mother's parental rights and by this Opinion Sur Appeal. Therefore, the Court incorporates those documents as if fully set forth herein.

The Court remains steadfast in its decision that Petitioners established by clear and convincing evidence that the parental rights of Mother to N.L., J.L., B.L. and Y.L. should be terminated pursuant to Sections 2511(a)(1), (2), (5), and (8) and that termination is in the best

5

interest of all four children pursuant to Section 2511(b). The Clerk of the Orphans' Court is directed to transmit the record to the Superior Court.

BY THE COURT:

Date: _August 26, 2016_

_JAY J. HOBERG, JUDGE_

ATTEST: 

DEPUTY CLERK - OCD

Copies to:    Catharine Roland, Esquire – Attorney for Appellant
              David Natan, Esquire – Assistant County Solicitor
              Gina Carnes, Esquire – Attorney for Father
              Pamela J. Breneman, Esquire – Guardian ad Litem
              Children and Youth Agency (2)
                    Y.C.    , Mother

6